**NATIONAL LABOR RELATIONS BOARD**

v.

**SHEN-VALLEY MEAT PACKERS,**
Inc., et al.

**No. 6719.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 12, 1954.

Decided March 6, 1954.

Horce Herrick, Attorney, National Labor Relations Board, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, Washington, D. C., and Irving M. Herman, Attorney, National Labor Relations Board, New York City, on brief), for petitioner.

Lawrence P. Solomon, Washington, D. C. (Joseph B. Danzansky and Milton Quint, Washington, D. C., on brief), for respondent Amalgamated Meat Cutters & Butcher Workmen of North America, Local 393, AFL.

Russell M. Weaver, Harrisonburg, Va. (W. W. Wharton and George S. Aldhizer, II, Harrisonburg, Va., on brief), for respondent Shen-Valley Meat Packers, Inc.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This case comes before us upon the petition of the National Labor Relations Board (hereinafter called the Board) for enforcement of its order against the Respondents, Shen-Valley Meat Packers, Inc., (hereinafter called the Company) and Amalgamated Meat Cutters and Butcher Workmen of North America, Local 393, AFL, (hereinafter called the Union). The order arises out of charges filed by Pearlie Baker and Doris Rodeffer that the Company had engaged in unfair labor practices within the meaning of Sections 8(a) (1), (2) and (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1–3) (hereinafter called the Act), and that the Union had engaged in unfair labor practices within the meaning of Sections 8(b) (1) (A) and 8(b) (2) of the Act.

A hearing was held before the Trial Examiner whose Intermediate Report and Recommended Order found the Company guilty of the alleged violations but recommended dismissal of the complaint against the Union. Subsequently, the Board issued its Decision and Order which reversed the recommendation of the Trial Examiner as to the Union and found both the Company and the Union guilty of the alleged violations.

The immediate question before us is whether substantial evidence on the record considered as a whole supports the Board's findings of unfair labor practices by the Company and the Union. This question may be further reduced to a determination of whether there is substantial evidence to support the Board's finding that both the Company and the Union, through its shop Stewardess, Florence Dellinger, knew of Baker's and

Rodeffer's positions and activities with a rival union, the United Construction Workers (hereinafter called UCW), and whether their discharge was because of their membership in the rival union and activities in its behalf. We do not think that substantial evidence on the record considered as a whole sustains such finding.

Shen-Valley Meat Packers, Inc., is a cooperative with its principal place of business located at Timberville in Rockingham County, Virginia. At the time of the alleged unfair labor practices, the Union was bargaining agent for the employees pursuant to a contract entered into with the Company in 1950. Baker and Rodeffer were employed as sausage hangers in the sausage-stuffing room of the Company. Also employed in the sausage room was Florence Dellinger, a stuffer who was a shop Stewardess of the Union.

At the time of the discharges and for some months previous, the Company had instructed its sausage stuffers to stuff the casings it was then using rather tightly, because it had received shipments of casings of the wrong size and it was necessary to pack them heavily in order to achieve the desired number of sausages per pound.

Disturbances developed between the stuffers and the hangers which resulted in Baker and Rodeffer complaining to Dellinger and Evelyn Litten, another stuffer, that they (Dellinger and Litten) were overstuffing the casings and thereby causing them to break. Dellinger and Litten's reply was that they were merely following the instructions of the foreman.

The breaking of the sausages occurred on many occasions and resulted in considerable friction between the girls. On a number of occasions Dellinger and Litten complained to the foreman, supervisor, and general manager of the plant about the conduct of Baker and Rodeffer, claiming that they found fault, caused disturbances in the plant and used abusive language. The first of these complaints commenced about three months before the discharge.

Some time after the disturbances began, UCW attempted to organize the employees of the Company. Baker and Rodeffer, with a large percentage of other employees, became affiliated with this organization.

The UCW held an organizational meeting at the Kavanaugh Hotel in Harrisonburg, Virginia, in August, 1951; and on the 24th day of August, 1951, there was another such meeting held at the Timberville Firehouse, at which meeting they agreed to attempt to strike the following Monday morning. At that meeting Baker and Rodeffer were designated as a committee to assist one Clatterbuck, the field representative of UCW, to negotiate with the Company immediately after the strike.

On Monday, August 27, 1951, just prior to the opening of the plant, there were present at the plant entrance Mr. Sheffield, Manager of the Company, A. G. Gray, the Union's business manager, and a small number of employees including Pearlie Baker. Doris Rodeffer was not present. The strike attempt failed when it became obvious that UCW did not have sufficient strength to close the plant, and the employees returned to their work. Thus, Baker and Rodeffer's function as conferees never materialized and they were not, at that time, identified as conferees to either the Company or the Union.

Two or three days after the abortive strike, Dellinger complained to General Manager Sheffield that she could no longer work with Baker and Rodeffer and that, unless Baker and Rodeffer were fired, she, with other sausage department employees, would quit. Sheffield discussed the matter with Plant Superintendent Garside and the sausage room foreman, Fritz Lindner, who had been advised by the other girls in the sausage room that they would not continue working with Baker and Rodeffer. It was agreed that both Baker and Rodeffer would be discharged at the end of the week.

Shortly after the discharge a committee of employees from the kill floor, a completely separate department of the Company, presented a petition to Sheffield requesting an opportunity to look into the justification of the action taken by the Company. A hearing was held the following week and on the committee of employees were members of UCW. It was the unanimous opinion of those present that Baker and Rodeffer had been discharged for just cause. Subsequently, Baker and Rodeffer filed their charges against the Company and the Union.

The Board, in its Decision and Order, has found that the Company discharged Baker and Rodeffer because of their UCW activities; it found that the Union, through its agent, Dellinger, exerted pressure to force these discharges purely as a competitive measure against the rival UCW. Such actions by the Company and the Union, if true, amounted to unfair labor practices, as alleged.

In reaching its conclusions, the Board necessarily found that representatives of both the Company and the Union had knowledge of Baker's and Rodeffer's activities on behalf of UCW. Lacking direct, affirmative testimony to such effect, the Board inferred such knowledge from the circumstances of the case.

Thus, the requisite knowledge is attributed to Dellinger because of Baker's alleged UCW solicitations in the sausage department. The requisite knowledge is brought home to other Union representatives because these representatives made the single admission of knowing of the proposed UCW strike. Likewise, the specific knowledge of Baker's and Rodeffer's UCW positions is inferred on the part of the Company because certain Company representatives admitted only to knowing of UCW activity within the plant.

These inferences have no direct substantiation by the testimony of any witness at the Trial Examiner's hearing. Opposed to such inferences is the direct and unequivocal testimony of every witness charged with such knowledge—testimony which absolutely denied any specific knowledge of Baker's and Rodeffer's positions with UCW.

There seems little doubt that the discharges were finally precipitated by the conference between Dellinger and Sheffield. Both these parties testified, without contradiction, that no mention of UCW was made during the course of this interview, and that the only subject of the talk was an airing of Dellinger's personal grievances. Before deciding on the discharges, Sheffield also discovered, from Fritz Lindner, that other girls in the sausage department harbored the same grievances and had expressed a similar reluctance to continue working with Baker and Rodeffer. This reason for the discharge is the only one positively demonstrated by the record.

Other factors, also, militate against these inferences. The committee of employees unanimously exonerated the Company of any discriminatory intent during the Company hearing; another employee, not a member of UCW, was discharged at the same time as Baker and Rodeffer; a UCW representative testified that 80 of the 115 Company employees were UCW members, yet no other UCW employee was discharged; the bases of certain inferences pertaining to Rodeffer, such as being in the picket line during the abortive strike, are completely refuted by the evidence and by Rodeffer's own testimony; and the testimony of plant Superintendent Garside that in no conversation relative to firing the girls was the UCW ever mentioned.

Knowledge by a Respondent of a dischargee's union membership is a prerequisite to a finding that the discharge was made for that reason. National Labor Relations Board v. Westinghouse Electric Corp., 6 Cir., 179 F.2d 507; Minnesota Mining & Mfg. Co., 81 N.L.R.B. No. 99. The Board has the burden of proving this knowledge and it is not sufficient that the proof be based on suspicion or surmise. National Labor Relations Board v. Sparks-Withington Co., 6 Cir., 119 F.2d 78. Even if such knowledge be assumed, however, we do not think that there is substantial evi-

dence to support the finding that the discharges of Baker and Rodeffer were made because of such union membership or activity. On the contrary, the evidence is practically undisputed that Dellinger had repeatedly made complaints with regard to their conduct; and any conclusion that her complaint at the time of their discharge was motivated by their membership in or activity in behalf of the UCW is entirely speculative and cannot serve as the basis of Board action. We agree, of course, that it is not necessary that knowledge or motive be established by direct evidence and that circumstantial evidence is sufficient; but the evidence must be of circumstances which do more than give rise to a mere suspicion. They must be of such a character that they can reasonably be accepted as establishing as a fact the matter which is in issue.

██ As Judge Parker has said, speaking for this court in Appalachian Electric Power Co. v. National Labor Relations Board, 93 F.2d 985, 989,

"* * * substantial evidence is evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences."

See, also, Peoples Motor Express, Inc., v. National Labor Relations Board, 4 Cir., 165 F.2d 903; National Labor Relations Board v. Tex-O-Kan Flour Mills Co., 5 Cir., 122 F.2d 433, 438; Foote Brothers Gear & Machine Corp. v. National Labor Relations Board, 7 Cir., 114 F.2d 611, 621.

██ The Board urges that we consider the whole record in determining what conclusion can reasonably be drawn from the evidence. It is just such a thorough consideration which prevents our discerning any reasonable grounds upon which the Board could hold that the Company or the Union had knowledge of the dischargees' positions and activities with

UCW, or that Dellinger was acting on behalf of the Union, rather than airing, as she had done before, her own personal grievances against Baker and Rodeffer. This is determinative of the entire case and there is no necessity to consider further issues.

The petition of the Board for the enforcement of its order is denied, and the order is set aside.

Petition for enforcement of order denied. Order set aside.