**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**Charles J. KAYE, Saima Kaye, David J.
Kaye and Joan K. Engberg, d/b/a
Arrow Press, Respondents.**

**No. 12617.**

United States Court of Appeals
Seventh Circuit.

Nov. 5, 1959.

Rehearing Denied Dec. 28, 1959.

Stuart Rothman, Gen. Counsel, George Schatzki, Atty., Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, Allison W. Brown, Jr., Attys., N.L.R.B., Washington, D. C., for petitioner.

John H. Doesburg, Jr., Chicago, Ill., for respondent.

Before MAJOR, PARKINSON and KNOCH, Circuit Judges.

MAJOR, Circuit Judge.

This case is before the court upon the petition of the National Labor Relations Board, pursuant to Section 10(e) of the National Labor Relations Act, as amended (61 Stat. 136, 29 U.S.C.A. § 151 et seq.), for enforcement of its order issued against respondent on January 12, 1959, following the usual proceedings under Section 10 of the Act. The Board's decision and order are reported at 122 N.L.R.B. No. 101. This court has jurisdiction of the proceeding, the alleged unfair labor practices having occurred at Milwaukee, Wisconsin, where

respondent, a commercial printer and lithographer, produces a substantial amount of goods for interstate commerce.

The Board found that respondent violated Section 8(a)(3) and (1) of the Act by discharging Donald J. Hentz for union activity, and further violated Section 8(a)(1) by ordering Hentz not to distribute union authorization cards.

Proceedings were held before a Trial Examiner who issued his Intermediate Report and a Recommended Order. Respondent's exceptions to the report were denied by the Board which, without opinion or discussion, approved it. The Board's order followed, enforcement of which is sought here.

At the hearing before the Trial Examiner, respondent contended that the discharge of Hentz was lawful for two reasons: (1) that Hentz on March 5, 1958, attempted to slow down production in the lithographing department by criticizing employees for turning out too much work, and (2) that Hentz violated respondent's rule or policy against solicitation by distributing union authorization cards on company time, thereby disrupting the employees. The Examiner, sustained by the Board, found against respondent on both contentions, characterizing each as a pretext to justify Hentz' discharge. Respondent advances the same contentions here and argues that the findings of the Board relative thereto are not supported by substantial evidence.

In the view which we take of the case, a brief statement of the facts will suffice. Respondent had no collective bargaining contract with a labor organization representing employees in any of its six departments. In its lithographing department, however, many of the employees maintained membership in Local 7, Amalgamated Lithographers of America. Respondent, from the time it first started this department in 1951, conformed to union rules and standards covering working conditions with respect to such employees. In December 1957, respondent informed these employees that it would not comply with the union standard that called for granting a paid holiday the day before Christmas for the reason that this would adversely affect the morale of other employees in the plant. On February 28, 1958, the employees in the lithographing department were informed that respondent could no longer conform to the union policy of a 35-hour work week and that the department was going on a 40-hour work week. Following these incidents, the employees of this department discussed among themselves the possibility of obtaining respondent's recognition of the union as their bargaining representative. The record is silent as to whether respondent had any information or knowledge relative to such discussions.

Hentz was hired as a pressman in the lithographing department in the spring of 1952, under an agreement by which he was to work under a union standard of 35 hours. Because of this special agreement with him, the employees of the lithographing department were informed that the change from a 35 to a 40-hour week would not apply to Hentz. Hentz appears to have been a leader among the employees in his department. He obtained some union authorization cards and, on the morning of March 5, 1958, showed one to respondent's general manager Kaye, requesting permission to distribute them among the lithographing employees. Kaye promised to think about it and let him know. About three hours later, Kaye told Hentz not to pass out the cards. Later the same day Kaye notified Joe Steib, foreman of the lithographing department, about his conversation with Hentz and that he had advised Hentz not to distribute the cards as Kaye considered it "solicitation." At or shortly after the end of the shift, Hentz passed out an authorization card to each employee. A few minutes later, Otto Passolt, another employee, commenced work on the following shift. At this time Hentz accused Passolt of operating two presses the night before. There is some dispute in the evidence as to exactly what was said at that time, but there is

no question but that Hentz criticized Passolt for producing more than he should. One witness testified that Hentz stated, "You are knocking hell out of production. You are running two presses."

Foreman Steib, who had witnessed these incidents and overheard the conversations relative thereto, telephoned to general manager Kaye and advised him that Hentz had distributed the union cards and also that Hentz was objecting to the production turned out by Passolt. Shortly thereafter, Kaye went to the washroom where Hentz was dressing preparatory to going home, and informed Hentz he was discharged. Hentz neither requested nor was told the reason therefor.

Both Steib and Kaye testified to the telephone conversation between them prior to the discharge of Hentz. Kaye also testified that he told union organizer Simon a day or two after the discharge of Hentz, "When a man starts slowing up our production in our department, I am not standing still for it." Simon, testifying as a witness for the General Counsel, did not deny that Kaye had made the statement to him. The Examiner found "that Steib reported to Kaye only that Hentz had distributed the union cards concerning which Kaye had directed Steib's attention in their conversation earlier in the day." Thus, the Examiner reasons and concludes that Kaye had no knowledge of Hentz' attempt to slow down production and, therefore, this could not have been a cause for his discharge. As stated in the Board's brief, "The Board adopted the Trial Examiner's finding with respect to this allegation, namely, that at the time General Manager Kaye discharged Hentz he had no knowledge of the alleged attempt by Hentz to slow down production."

■■ When the record is considered as a whole, as it must be, it is our judgment that the Examiner's finding, approved by the Board, that respondent was without knowledge of Hentz' attempt to slow down production prior to the time of his discharge, must be reject-

ed. The finding is based upon a dubious inference, in face of direct and positive evidence to the contrary. In this connection, it is pertinent to note that there is no proof of any anti-union bias or activity on the part of respondent. It has been held, and we think properly, that inferences contrary to direct testimony are not ordinarily sufficient to support a finding. See N.L.R.B. v. Fox Mfg. Co., 5 Cir., 238 F.2d 211, 214, and cases therein cited and discussed. See also N.L.R.B. v. Pittsburgh Steamship Co., 340 U.S. 498, 502, 71 S.Ct. 453, 95 L.Ed. 479. Moreover, it seems unreal to attribute to respondent a discriminatory and therefore unlawful motive in the discharge of Hentz when a non-discriminatory and therefore lawful reason existed. See Miller Electric Mfg. Co. v. N.L.R.B., 7 Cir., 265 F.2d 225, 226. The indulgence of such an assumption casts a serious reflection not only upon the intelligence of respondent's managing official but upon his common sense. This there is no occasion to do.

■■ Although hardly necessary, we add that Kaye had a lawful basis for the discharge of Hentz if he acted on information that Hentz was engaged in the slowing of producton, even though such information was incorrect. See N.L.R.B. v. Arthur Winer, Inc., 7 Cir., 194 F.2d 370, 375. The Examiner so admits and states in his report, " * * * if Respondent, in fact discharged Hentz for believing that he interfered with production, it would not be unlawful even if Respondent's belief in regard thereto was incorrect."

In view of what we have said, and in the posture of the case as presented, we think there is no good reason to discuss the Board's findings or the proof in connection therewith relative to the alleged violation by Hentz of respondent's nonsolicitation rule. To do so would only burden this opinion and serve no useful purpose.

For the reasons heretofore stated, the petition of the Board for enforcement of its order is denied.