**PORTABLE ELECTRIC TOOLS, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent.

No. 13591.

United States Court of Appeals
Seventh Circuit.

Oct. 24, 1962.

424

John F. Cusack, James J. Cusack, Jr., and Robert E. Cusack, Chicago, Ill., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul J. Spielberg, Attorney, N. L. R. B., Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Samuel M. Singer, Attorney, N. L. R. B., for respondent.

Before HASTINGS, Chief Judge, and KILEY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This is a petition to review and set aside an order of the National Labor Relations Board pursuant to Section 10(f) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 160 (f). The order directs petitioner, Portable Electric Tools, Inc., to cease discouraging membership in labor unions or interfering with its employees' right to organize and bargain collectively as proscribed by Sections 8(a) (1) and (3) of the Act, 29 U.S.C. §§ 158(a) (1), and (3). Affirmatively, the order directs petitioner to offer full reinstatement to one Yvonne Ballard, the charging party and its former employee, to make her financially whole for the period of time since her discharge, and to post the usual notices. The Board in its answer asked for enforcement of the order.

The contested issues arise from petitioner's contentions that the Board's findings are not supported by substantial evidence and that it was denied a fair hearing by the Trial Examiner.

Petitioner is engaged in the manufacture of electric tools and electronic devices, and sells them in interstate commerce. On November 1, 1960 it moved its plant from Chicago to Geneva, Illinois. Yvonne Ballard was hired as a drill press operator on November 8, 1960. She was discharged on December 15, 1960. The Trial Examiner concluded that she was discharged because of union activity. Petitioner contends that it had no knowledge of any union activity on Mrs. Ballard's part and that it discharged her for good cause—among other reasons because she was absent too often, frequently tardy, and away from her machine too much.

The record shows that during the twenty-seven full working days and five part-time Saturdays, which span her entire employment period, Yvonne Ballard was less than an "ideal" employee. In the first four days she was late once. In the second five and a fraction days she was absent twice. In the third four and a fraction days she was late once and absent two full days and the fraction day. Also, during this period, she was frequently admonished about excessive absences from her machine, allegedly for visits to the washroom. In addition, petitioner received several calls from creditors of Yvonne Ballard and a collection agency which raised the prospect of garnishment proceedings. The charging party was receiving Aid to Dependent Children from the local welfare agency in the form of grocery orders, each valued at $28.22 a week, during at least some of the weeks of her employment. Although the evidence is not clear on this, it appears that her family was only entitled to this aid if Mrs. Ballard was employed for less than a full workweek. Petitioner had received at least one call from the agency inquiring as to the work status of Mrs. Ballard. Since her daily wage was considerably less than

$28.22, it is reasonable to infer that at least some of her absences were due to a desire not to be removed from the welfare agency rolls.

Petitioner introduced testimony at the hearing that the average output or efficiency of employees, other than Yvonne Ballard (and one other employee who was discharged), was approximately 90 percent, and that the efficiency of Yvonne Ballard was 70 percent. While the accuracy of the records from which this "efficiency" was evaluated was questioned by the Trial Examiner, the record bears out petitioner's claim that Mrs. Ballard was below average in efficiency even in view of her short time with the company.

Although there was no evidence that Yvonne Ballard was a union member, she testified that she had passed out union cards commencing some two weeks prior to her discharge—a total of nine cards in all. Mrs. Ballard stated that she passed these cards out at coffee breaks and during the lunch hours. She further testified that she did this when no one else was around or only when others that she was sure she could trust were around. She was fairly certain that no one else observed these exchanges. Other than a conversation that took place between Mrs. Ballard and Mr. Lundman, the personnel director of petitioner, on the day of discharge, there was no evidence offered that tended to show that the company had any knowledge that union activity was going on in the plant. On the contrary, petitioner called several witnesses, including several fellow employees of Mrs. Ballard, who testified that they were unaware of any union activity.

The Trial Examiner, in finding a violation of the Act, relied exclusively on the testimony of the charging party herself, quoting the personnel director, Mr. Lundman. She said she was called to his office and told she was fired. He gave her several reasons for her discharge, including unsatisfactory production. She said she told him she had never been warned. She then added:

> "After that, he handed me my checks and he said, 'well', he says, 'that isn't the only reason either, but', he says, 'that is the only reason that I am going to give you right now.'
>
> "I said, 'I know that isn't the only reason I was fired. I know better than that, and you know I was given no warning.'
>
> "He said, 'Allright, between you and I', and he closed the door; he said, 'you are a union organizer.'
>
> "I took the checks and said, 'if you think you're going to stop the union snowballing in this shop you are mistaken.'"

Mr. Lundman emphatically denied that he made any statement regarding union activity. In his intermediate report, the Trial Examiner said:

> "Other than the foregoing testimony of Mrs. Ballard, there is no other evidence in the record, either of union animus on the part of Respondent, or of company knowledge of Mrs. Ballard's union activities. Essentially, therefore, the issue which must be resolved in this case is one of credibility, since it is quite obvious that if I credit Mrs. Ballard's testimony and conclude therefrom that she was discharged because she was a 'union organizer,' a fortiori, Respondent would thereby have committed an unfair labor practice within the meaning of Section 8(a) (3) and (1) of the Act. To resolve this question of credibility, it becomes necessary to examine and analyze the record in respect to the alleged deficiencies of Mrs. Ballard which are asserted by Respondent as the reasons for her discharge, and the Company's rules in respect thereto."

The Trial Examiner then proceeded to examine and treat separately the company's complaints against Mrs. Ballard:

(1) tardiness; (2) "chronic" absenteeism; (3) the nuisance of inquiries concerning Mrs. Ballard from creditors and the welfare agency; (4) Mrs. Ballard's poor production; and (5) excessive use of washroom and time away from machine. He concluded that each category was actually explainable in Mrs. Ballard's favor, that each "were afterthoughts and pretexts to conceal the Respondent's true motivation," and therefore, could not have been the real reason for her discharge.

The Trial Examiner's labored analysis of the evidence to show that the company's stated grounds for discharging Mrs. Ballard were questionable does not warrant a finding that the real reason was her union activity absent independent evidence that such activity existed and that the company knew of it. Negative evidence alone cannot supply the proof which must underlie the order if it is to stand. We hardly need to state the obvious, that the company, not being unionized, need not have had a good or any reason to discharge Mrs. Ballard absent a positive showing that the real motive was to discourage and prevent union activity.

In this connection we believe the following quotation from N. L. R. B. v. McGahey, 233 F.2d 406, 412–13 (5th Cir. 1956), is pertinent:

"The Board's error is the frequent one in which the existence of the reasons stated by the employer as the basis for the discharge is evaluated in terms of its reasonableness. If the discharge was excessively harsh, if lesser forms of discipline would have been adequate, if the discharged employee was more, or just as, capable as the one left to do the job, or the like then, the argument runs, the employer must not actually have been motivated by managerial considerations, and (here a full 180 degree swing is made) the stated reason thus dissipated as pretense, nought remains but antiunion purpose as the explanation. But as we have so often said: management is for management. Neither Board nor Court can second-guess it or give it gentle guidance by over-the-shoulder supervision. Management can discharge for good cause, or bad cause, or no cause at all. It has, as the master of its own business affairs, complete freedom with but one specific, definite qualification: it may not discharge when the real motivating purpose is to do that which Section 8(a) (3) forbids."

The fact that a solid basis for the discharge of Mrs. Ballard for cause exists would not, standing alone, prevent the Board from finding that her discharge was motivated by her union activity—provided there is substantial evidence in the record considered as a whole to support such a finding. Osceola County Co-op. Creamery Ass'n. v. N. L. R. B., 251 F.2d 62 (8th Cir.1958). If this Court, however, is not to be "merely the judicial echo of the Board's conclusion" then its determination must "be set aside when the record * * * clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both. * * * The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 446, 95 L.Ed. 456. While recognizing that the question of credibility is for the trial examiner, an Appeals Court is not precluded from independently determining what weight certain testimony which he finds credible should be given when evaluating the evidence on the record as a whole.

The Board argues the discriminatory nature of Mrs. Ballard's discharge as though the burden was upon the petitioner to exonerate itself of the charges made against it. The burden, however, is on the Board to show affirmatively by substantial evidence that the discharge was discriminatory and motivated by

Mrs. Ballard's alleged union activities. Indiana Metal Products Corp. v. N. L. R. B., 202 F.2d 613 (7th Cir.1953); N. L. R. B. v. Reynolds International Pen Co., 162 F.2d 680 (7th Cir.1947).

The company called many witnesses on its behalf to rebut any inference of knowledge on its part of union activity. To show knowledge the General Counsel relied completely on the uncorroborated testimony of Mrs. Ballard. Mr. Lundman, the personnel director, denied making the statement attributed to him by Mrs. Ballard. He was in charge of company personnel relations with some 900 employees. It hardly seems conceivable that an executive of his experience would make the blunder of admitting to Mrs. Ballard that she was being discharged for union activity, particularly in view of the other substantial reasons the company had for discharging her. The indulgence of such an assumption would cast serious reflection upon the intelligence and common sense of petitioner's personnel director. There is no occasion to do so in the absence of corroborating evidence which would tend to support Mrs. Ballard's version of the conversation. N. L. R. B. v. Kaye, 272 F.2d 112 (7th Cir.1959). Even when her uncorroborated self-serving statement is taken into consideration there is yet wanting substantial evidence for the finding of the Trial Examiner, adopted by the Board, that Mrs. Ballard was discriminatorily discharged because of union activity.

With this determination, there is no need to discuss or decide the other issue raised by petitioner, namely, the alleged bias of the Trial Examiner which it claims prevented a fair hearing.

The order is vacated; perforce, enforcement of it is denied.

KILEY, Circuit Judge (concurring).

I concur in the result reached by the court. Petitioner had the burden of proving knowledge on the part of the respondent of Mrs. Ballard's union ac-

tivity. N. L. R. B. v. Shen-Valley Meat Packers, Inc., 211 F.2d 289, 292 (4th Cir.1954). She sought to prove this essential element by testimony that she passed union cards to her fellow employees in the plant, and that Personnel Director Lundman told her that the "real reason" that she was being fired was because she was a "union organizer."

The testimony as to the union cards affords no basis for an inference that respondent had the essential knowledge. Her direct testimony as to Lundman's statement is directly denied by him. And her direct testimony is so weakened by her entire testimony on this vital point that it was error for the trial examiner to "credit" her testimony and not "credit" Lundman's and accordingly to find that the element of respondent's knowledge had been proved. See Farmers Cooperative Co. v. N. L. R. B., 208 F.2d 296 (8th Cir. 1953), and Davis, Administrative Law Text § 29.06 (1959).