**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AUDIO INDUSTRIES, INC., Respondent.**

**No. 13783.**

United States Court of Appeals
Seventh Circuit.

Jan. 17, 1963.

Rehearing Denied March 13, 1963.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Lee M. Modjeska, Atty., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Solomon I. Hirsh, Harold B. Shore, Attys., National Labor Relations Board, Washington, D. C., for petitioner.

Sheldon M. Charone, Walter L. Adams, Chicago, Ill., Warren J. Rommes, Michigan City, Ind., Henry E. Seyfarth, Harvey M. Adelstein, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for respondent.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.

This case is before the court on the petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, as amended (61 Stat. 136, 29 U.S.C.A. § 151 et seq.), for enforcement of its order issued against respondent, Audio Industries, Inc., on February 16, 1962. This court has jurisdiction under Section 10(e) of the Act, the alleged unfair labor practices having occurred in Michigan City,. Indiana, where respondent manufactures electronic products.

The Trial Examiner and Board found that respondent violated Sections 8(a) (3) and (1) of the Act by its failure to recall from layoff status five employees because of their activity on behalf of Local Union No. 298, General Teamsters, Chauffeurs and Helpers. The facts are as follows:

In March 1960, the Union began a campaign to organize the production and maintenance employees at respondent's plant. An "organizing committee" was formed, consisting of sixteen employees of the Company. On March 24, 1960, the Union distributed a leaflet to all of respondent's employees notifying them of the names of their fellow workers who were serving on the committee. Both Roy McClure, general manager, and Edmund Dolembo, vice president and personnel director, saw this leaflet.

On May 25, 1960, a representation election was held, and a majority of the employees voted against the Union. On

April 22, 1960, one month before the election, respondent laid off twelve employees for economic reasons. On July 23, 1960, two months after the election, forty-eight more employees were laid off for economic reasons. Among the sixty employees thus affected by this reduction in force were twelve employees who were identified in the Union's leaflet as members of the organizing committee. The other four members of the committee included the chairman, who was never laid off, and three employees who had quit.

In August 1960 and March 1961, thirty-two of the original sixty employees were recalled, including three who had been on the organizing committee. Of the remaining twenty-eight who were not recalled were the five employees involved on this appeal, all of whom had been active as members of the Union's organizing committee—Gertrude Rempala, Mary Ratliff, Janice Reed, Walden Ratliff, and Frances Celebucki.*

■ There were two alleged incidents from which the Trial Examiner and the Board found that respondent displayed an antiunion animus or bias. This alleged bias formed the background for the alleged violations herein. First, there was testimony of one Albert Heisler, an employee who was laid off and not recalled. He testified that a few weeks before his layoff in April 1960, he heard McClure, the general manager, state to a group of employees as follows:

> "Well, I understood him to say that the union better go through or—but if the union didn't go through, there would be a lot of re-organization done there, and they would also find out who's running the place. And there would also be a lot of new faces there."

McClure denied making the statement, and no witnesses were called to corroborate the testimony of Heisler regarding this incident.

The second incident upon which the Board relied in finding an antiunion bias on the part of the respondent occurred in March 1961. At that time vice president Edmund Dolembo telephoned the Indiana State Employment Service and requested that job applicants be referred to the Company. On the face of the requisition form made out by the Employment Service is the notation: "Do not refer any former employee of Audio or Elco." Elco Electronics was one of respondent's three local competitors and was the only competitor whose employees were organized. The Trial Examiner and the Board concluded that Dolembo manifested a predilection against hiring union members by his direction that no former Elco and Audio employees be referred to the Company. The reasons he gave for this instruction, which the Trial Examiner rejected, were three-fold:

1. In the past, certain trade secrets involving the design of new products had "leaked out" to Elco. To eliminate the possibility of such leaks in the future, respondent did not want employees who were probably friendly with Elco's employees and might divulge these trade secrets.

2. Respondent wished to eliminate "job skipping" between respondent and Elco.

3. Employees who were not satisfactory to Elco would not be satisfactory to respondent.

In rejecting this explanation, the Trial Examiner felt that logically the same considerations should apply to former employees of the two other nonunion competitors, yet no similar restrictions were adopted as to them. He improperly disregarded the testimony of Dolembo that Dolembo requested the Employment Service by telephone not to refer former employees of Elco or of any other competitor.

■ The Trial Examiner's inferences of antiunion animus on the part of re-

---

* The Board reversed the Trial Examiner's finding that respondent violated Sections 8 (a) (3) and (1) in failing to recall a sixth employee, Lottie Shiparski, who was not a member of the organizing committee.

spondent based on these incidents cannot be sustained. Although it is a general rule that questions of credibility are for the Trial Examiner and the Board—N. L. R. B. v. Walton Manufacturing Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); Sunshine Biscuits, Inc. v. N. L. R. B., 274 F.2d 738 (7th Cir., 1960)— inferences contrary to direct testimony are not sufficient to support a finding of antiunion animus. N. L. R. B. v. Kaye, 272 F.2d 112 (7th Cir., 1959); N. L. R. B. v. Ray Smith Transport Co., 193 F.2d 142 (5th Cir., 1951).

■ In reviewing the order of the Board, we must apply the standards laid down by the Supreme Court in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The court in that decision said at pages 490–491, 71 S.Ct. at page 466 as follows:

"* * * The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.

\* \* \* \* \* \*

"* * * Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals. * * *"

In Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197 at page 229, 59 S.Ct. 206, at page 217, 83 L.Ed. 126, (1938), the court stated:

"* * * Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

■ There is no substantial evidence in the record to support the Trial Examiner's conclusion that respondent's sole reason for instructing the State Employ- ment Service as to referrals was to preclude the hiring of prounion employees. The testimony of respondent's witnesses as to the circumstances surrounding the instructions to the State Employment Service is uncontroverted. Respondent's policy of not employing former employees of at least one competitor, Elco, may not have been effective to protect its interests, but the fact that more feasible methods were available is immaterial. The Board may not substitute its judgment for that of the employer as to the selection and discharge of employees. The Act proscribes the exercise of the right to hire and fire only when it is employed as a discriminatory device. N. L. R. B. v. Wagner Iron Works, 220 F.2d 126 (7th Cir., 1955).

As to the alleged antiunion statement by McClure to a group of employees, this court cannot say that the Trial Examiner erred in crediting the testimony of Heisler that such a statement was made, although this testimony is highly doubtful in view of the lack of corroborating testimony by anyone from the group of employees who allegedly heard the statement. Such an isolated statement can scarcely be considered substantial evidence to support the unfair labor practice charges here. It is necessary, therefore, to consider the testimony and evidence as to the individual employees and the respondent's alleged reasons for its failure to recall them from layoff status.

Before turning to the specific findings with respect to the five employees here involved, the background of the layoff procedure at respondent's plant should be summarized.

■ The uncontradicted testimony of Roy McClure indicates that the quality control aspects of respondent's operations were in need of correction at the time he assumed his duties as general manager in the fall of 1959. In order to reduce the great number of rejects which were being produced, it was necessary to introduce a new system of assembling parts as well as to establish new personnel procedures. Specifically, McClure instituted a policy of screening em-

ployees more closely when they were recalled from seasonal layoffs. In line with this policy, McClure testified that consideration was given to the employees' general cooperative attitude, ability, absenteeism, and the quality of their work. McClure's testimony, discredited by the Trial Examiner, was that the application of these standards resulted in his decision not to recall the employees involved herein. The facts as to the five employees involved on this appeal are as follows:

GERTRUDE REMPALA worked as a phaser from 1956 until her last layoff on July 23, 1960. During this period she had been laid off because of seasonal suspensions in operations but had been recalled on each occasion. McClure's undisputed testimony was that the reason she was not recalled was because her position on the phasing line had been eliminated. In addition, she allegedly had a tendency to wander away from her work station, rendering the phasing line inoperative. The Trial Examiner's refusal to credit this testimony was apparently based upon his belief that this alleged trait or tendency did not exist, since it did not prevent McClure from recalling her after a prior layoff in January 1960. This conclusion is without foundation in the record since it overlooks the underlying reason why she was not recalled in 1961—the elimination of her job on the phasing line. Moreover, it should also be noted that McClure had been general manager for only a short time when the January 1960 layoff occurred, and his new policy of screening employees to be recalled was not put into effect until the spring of 1960. It is undisputed that no new phasers were hired, and fewer employees are now utilized in the phasing operation than were utilized in January 1960 when Rempala was recalled. The finding that Rempala was not recalled because of her union activities is not supported by substantive evidence in the record considered as a whole.

MARY RATLIFF worked as a wirer from July 1959 to July 1960 when she was laid off. Like Gertrude Rempala, she had been laid off for economic reasons before but had been recalled after each such occasion. McClure testified that she was not recalled because she had trouble keeping up with the other girls on the line and was a slow worker. The Trial Examiner again rejected McClure's explanation and instead credited the testimony of one of respondent's supervisors, Josephine Geoffrion, who characterized Mary Ratliff's work as "average." This was the same rating given by this witness to four other employees who were recalled in March 1961. The Trial Examiner's conclusion is based on the premise that Geoffrion "was in the best position to observe Mary Ratliff's work and compare it with that of the four girls who were recalled in March 1961." Such a conclusion cannot stand where there is no evidence to indicate who was in the best position to observe any of these employees. In addition, the characterization that her work, along with all the other employees involved herein, was "average" cannot be considered a valid reason to reject McClure's explanation as to why certain other girls were recalled and Mary Ratliff was not. The finding that Mary Ratliff was not recalled because of her union activities is not supported by substantial evidence in the record considered as a whole.

JANICE REED worked as a wirer from 1952 until her layoff in July 1960. McClure testified that she was not recalled because she did not adjust her speed to that of the other employees on the assembly line, thus impairing the efficiency of the line. He also cited her excessive absenteeism. Josephine Geoffrion considered Janice Reed's work as "average" but stated: " * * * it seemed like I had a little more trouble with Janice. She was a little on the nervous side, and she would more or less take more time off than the others." The Trial Examiner again discredited McClure's testimony for three reasons:

1. McClure could have availed himself of the opportunity to eliminate this alleged inefficient employee by not recall-

ing her from a prior layoff in January 1960.

2. McClure failed to explain why he did not shift this employee to another position on the line where her uneven pace would not have affected the operations of the other employees.

3. One of the employees who was recalled had been intermittently absent from work because of sickness.

The testimony of both McClure and Geoffrion with regard to Reed's absenteeism is uncontradicted, and the Trial Examiner's conclusion that she could have been shifted to another position on the line does not answer the problem raised by absenteeism. In addition, there is no basis for the examiner's comparison between Reed's excessive absenteeism and the absenteeism of a recalled employee because of sickness. With such invalid conclusions aside, the finding that Janice Reed was not recalled because of her union activities is not supported by substantial evidence in the record considered as a whole.

WALDEN RATLIFF worked as a stock chaser from 1958 until his layoff in April 1960. McClure testified that Ratliff had had a brain operation which prompted his absence from December 3, 1959 to January 20, 1960. Upon returning to work after this operation, Ratliff's demeanor and attitude changed, and he became "rough with the girls in the stock room" and "they became afraid of him." McClure then removed Ratliff's stock room key from him so that he could not enter the stock room without McClure's knowledge. The Trial Examiner again discredited uncontroverted testimony and concluded that the attendant fears of the stock room girls and the other conditions described by McClure either did not exist or were given little weight by McClure. The basis for this conclusion apparently was McClure's testimony that the girls had made complaints in January or February, and yet Ratliff was retained until the economic layoff in April 1960. Here again the examiner has substituted his judgment for that of management as

to proper methods of handling disciplinary and efficiency problems, and his conclusion of discrimination of Ratliff for his union activities is without substantial evidence in the record considered as a whole.

FRANCES CELEBUCKI worked as a wirer from July 1959 until her layoff in July 1960. The testimony and findings with regard to this employee are particularly scant. McClure testified that she was a slow worker, and her slowness made her an undesirable employee. The only other testimony was that of Josephine Geoffrion who stated that Frances Celebucki "would be in the same category" as the other workers, which presumably was "average."

It is also significant that the chairman of the organizing committee was never laid off, and three of the committee members who had been laid off were recalled in August 1960. There is no evidence in the record as to why respondent would single out these five committee members for discriminatory practices. Their union activities were not shown to have been more extensive than the activities of any of the other committee members.

In summary, a reading of the entire record indicates that the Trial Examiner and the Board erred in ignoring testimony which was largely uncontroverted in any material respect, and in substituting their judgment for what are basically managerial decisions. Their mere failure to accept the reasonableness of the respondent's explanations regarding these five employees does not mean that respondent's action must have been motivated by antiunion animus. See N. L. R. B. v. McGahey, 233 F.2d 406, 412–413 (5th Cir., 1956), and Portable Electric Tools, Inc. v. N. L. R. B., 309 F.2d 423 (7th Cir., 1962).

When reduced to final analysis, the findings of the Trial Examiner rest solely upon two isolated incidents of dubious significance—one, an alleged comment by respondent's personnel manager, and the other being a phone call to the State Employment Service regarding the refer-

ral of job applicants. Further, the examiner's practices of consistently discrediting the testimony of respondent's witnesses despite the lack of contradictory testimony does not reflect a complete and fair consideration of all the evidence. Cf. N. L. R. B. v. Reynolds International Pen Co., 162 F.2d 680, 689 (7th Cir., 1947); Farmers Co-Operative Co. v. N. L. R. B., 208 F.2d 296, 303 (8th Cir., 1953); N. L. R. B. v. Ray Smith Transport Co., 193 F.2d 142 (5th Cir., 1951).

Applying the standards laid down by the Supreme Court in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), we must reject the Trial Examiner's findings with regard to the five employees as being unsupported by substantial evidence in the record as a whole. Therefore, the petition of the Board for enforcement of its order is Denied.