**DUBIN–HASKELL LINING CORP.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**
No. 10242.

United States Court of Appeals
Fourth Circuit.
Argued March 11, 1966.
Decided March 10, 1967.

Richard E. Miller, New York City, (Margolies & Miller, New York City, on brief), for petitioner.

Robert A. Giannasi, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., N.L.R.B., on brief), for respondent.

Before BOREMAN, Circuit Judge, MARVIN JONES, Senior Judge,* United

* Sitting by designation.

States Court of Claims, and BRYAN, Circuit Judge.

BOREMAN, Circuit Judge:

By its petition Dubin-Haskell Lining Corp., (hereafter the company) seeks review of the action of the National Labor Relations Board which determined that the company had interrogated, discriminatorily discharged, and refused to reinstate an employee, Fred Cox, in violation of sections 8(a) (1), (3) and (4) of the National Labor Relations Act. The Board ordered that Cox be reinstated to his former position with back pay and all other rights and benefits.

The company is a New York corporation which manufactures linings for men's shirts. It has principal places of business in New York, South Carolina and Tennessee. This proceeding involves the plant located at Collierville, Tennessee, a town of 2,000. The company employs twenty-seven or twenty-eight workers and the plant is managed by Charles Jones. Fred Cox worked in the shipping department and had been so employed for five years preceding his discharge.

At the outset the company argues that Cox was not an employee protected by the Act, but was a "supervisor" with the power to make recommendations as to hiring, firing, and the transfer of men and that he was responsible for the shipping department. Section 2(3), 29 U.S.C. § 152(3) (1964), of the Act excludes supervisors as defined by section 2(11), 29 U.S.C. § 152(11) (1964). The latter section provides:

"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

At the hearing, plant manager Jones testified that Cox was responsible for the operation of the shipping department; that he had authority to recommend that men be hired, fired and transferred from one department to another and recommend increases in compensation to certain employees. However, soon after Cox's discharge Jones had signed an affidavit in which he expressly and specifically denied that Cox had any authority to hire and fire. The affidavit pointed out that Cox had merely suggested transfers and that his duties in the shipping department were no more than routine in nature.

Cox testified that he neither possessed nor exercised such powers but did on occasions suggest that employees be given a raise. However, he denied recommending or suggesting that employees be transferred out of the shipping department. The Examiner found that Jones' demeanor was lacking both in candor and a desire to state the facts objectively; on the other hand, Cox appeared to be frank and forthright. The Examiner concluded that if there were factual conflicts he chose to accept Cox's version over that of Jones.

Whether an employee is a supervisor is a question of fact to be resolved by the Board, and such finding, if supported by substantial evidence, must be accepted as final. Northern Virginia Steel Corp. v. N. L. R. B., 300 F.2d 168, 171 (4 Cir. 1962); N. L. R. B. v. Southern Bleachery & Print Works, 257 F.2d 235, 239 (4 Cir. 1958). In view of Cox's own statements that he had no powers or authority of a supervisor coupled with the affidavit of Jones, and the Examiner's finding as to Jones' demeanor, we find that there was substantial evidence to support the Board's conclusion that Cox was not a supervisor. It seems that Cox's duties, even if considered in light most favorable to the company, were no more than routine in nature and that any followed recommendations of his were honored out of respect for his judgment rather than because of delegated authority. N. L. R. B. v. McCormick

Concrete Co., 371 F.2d 149 (4 Cir. 1967); Northern Virginia Steel Corp. v. N. L. R. B., supra.

### INTERFERENCE, RESTRAINT, AND COERCION

With respect to the section 8(a) (1) violation the Examiner found that Cox, in April 1964, contemplated organizing the workers at the Collierville plant. The desire for union representation of employees was engendered and stimulated by the company's denial of an employee request for an increase in wages. In early June Cox was summoned by Jones to the latter's office. Jones asked Cox if any of the men were contemplating forming a union and Cox replied in the negative. Jones told Cox that important customers (Colonial and Spartan) "would quit us" if a union were organized and it would mean Cox's job as well as his (Jones'). Jones ended this conversation by asking Cox to let him know in the event anything further was heard about the union.

Jones admitted discussing union activity and making a statement to the effect that Colonial and Spartan would cease doing business with the company if the latter were unionized. However, Jones claimed that such a discussion took place on the floor of the plant and not in his office. Jones denied that he threatened or interrogated Cox and he likewise denied that he asked Cox to report any union activity to him.

■■ The findings of the Examiner when based on credibility of witnesses are given added weight by the Board. As a general rule such findings when adopted by the Board are to be accepted by the court. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 495, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Southland Mfg. Co., 201 F.2d 244 (4 Cir. 1952). See Jaffe, Judicial Review: Questions of Fact, 69 Harv.L.Rev. 1020, 1035–38 (1936).

■ Accepting the Board's findings as to what occurred, we are limited to deciding a question of law—whether the statements made by Jones violated section 8(a) (1) of the Act. Even in this area we give due consideration to the Board's expert opinion as to the effect of such statements. N. L. R. B. v. McCormick Concrete Co., supra; N. L. R. B. v. Stanton Enterprises, Inc., 351 F.2d 261, 264 (4 Cir. 1965); Daniel Constr. Co. v. N. L. R. B., 341 F.2d 805, 811 (4 Cir. 1965).

■ It is clear that such statements may or can be violations of section 8(a) (1) although they contain no express threats of economic reprisals. While it might be argued that Jones' remarks amount to little more than prophecy and expression of opinion within the protection of section 8(c), the request to report future activity seems calculated to create the impression that the employer was on guard for union activity, and intended if need be to take measures designed to prevent the union from gaining a foothold. Likewise such questions and remarks, made without assurances that no reprisals would be taken, leave the employee to conjure up various images of employer retaliation. We are not concerned at this point with the company's argument, discussed below, that the Board has not proved that the company had knowledge of Cox's union activity for the remarks made by Jones were violative of section 8(a) (1) even if made without any knowledge of Cox's organizing role because such remarks would have the effect of chilling future as well as any present union activity.

### DISCHARGE IN VIOLATION OF SECTIONS 8(a) (3) AND (1)

The Examiner found that Cox was discharged for his union activity in violation of sections 8(a) (3) and (1) of the Act; that, despite the fact that Cox had been questioned by Jones, Cox was steadfast in his desire and efforts to organize the men at the Collierville plant; that Cox established contact with the Amalgamated Clothing Workers of America, AFL–CIO, in Memphis, which organization referred him to a Mr. Burcham; and that Cox, assisted by Thomas Anthony, a fellow-employee, increased his

efforts to organize the employees and to secure authorization cards.

The Examiner further found that on Saturday, July 25, 1964, Cox reported to work and noticed that a drawer of his desk was in a state of disarray as though it had been ransacked. Cox also noticed that Jones was already at work in his office although it was only 7:00 A.M., and this was most unusual since Jones seldom worked on Saturdays. Shortly thereafter Jones summoned Cox into his office and stated that he (Cox) was being discharged. When Cox asked the reason for this action Jones informed him that it was due to the fact that he could not get along with his fellow-employees. Cox stated that this was not true and asked for the real reason to which Jones replied that he did not want to lose his temper and thereupon handed Cox an envelope containing his wages then due.

The company explains that Cox could not get along with the other employees because he had requested that four workers be transferred out of his department. However, in an affidavit signed several weeks after Cox's discharge and at the hearing Jones assigned two additional reasons for discharging Cox. He asserted that Cox had been insubordinate and that he was incapable of accepting criticism. As an example of Cox's insubordination Jones testified that on July 24, 1964, the day prior to Cox's discharge, he noticed that the center lining department needed help and ordered Cox to take his men to that department. Jones stated that Cox sat on a box without evidencing an attempt to obey the instruction, and that he answered Jones in rude fashion. After some time had elapsed—the exact length is in dispute— it was called to Jones' attention that the center lining department was still in need of assistance and that Cox and his men had not reported. Jones returned to the shipping department and on seeing Boyce Wilson ordered him to report to the center lining department. Wilson testified that he asked Cox if Jones had instructed the men to work in center lining but that Cox did not answer him. The Examiner found that after Jones instructed Cox to report to center lining the latter

"said words to the effect that the men in center-lining were about caught up and did not need any help. Cox did not immediately take his men over to 'Center Lining' but went to the restroom. Around 15 minutes later someone from the Center Lining complained to Jones about needing help. Jones went out into the work area, did not see Cox or the other men working in Center Lining but saw one of Cox's men (Boyce Wilson) and told Boyce Wilson to go and help in Center Lining. About this time Cox returned from the restroom and took his other men over to 'Center Lining.' Boyce Wilson asked Cox why he had not been told to go to Center Lining and Cox did not reply."

The Examiner further found that, because Jones later supplied additional reasons for Cox's discharge, the reason given to Cox at the time of discharge was false and that the additional reasons were pretextuous, simply an afterthought in an attempt to conceal the real reason motivating Cox's discharge.

No testimony was produced to prove that Jones or any other representative of the company knew that Cox or any other employee was attempting to organize the plant. The Examiner assigned as reasons which led him to believe that Jones had knowledge of Cox's union activities the following:

"Considering all the evidence in the case, the smallness of the plant and the small number of employees (27), the smallness of the town in which the plant was located (population 2,000), Jones' definite interest in the union problem as revealed by his statements to Cox in early June 1964, the false reason for discharge and the additions thereto, and the past indications that many of Respondent's employees had reported union activity to the Respondent's Manager Jones, I find it proper to infer and do infer from all the circumstances of this case that Respondent's Manager Jones knew of the union

activity of Cox and his fellow employees."

The company contends that the Trial Examiner's reference to "the false reason for discharge" represents an improper shifting of the burden of proof to the company because the Board must prove a discriminatory motive and, in the absence of any positive evidence thereof, it is not the company's burden to prove a lack of discrimination.

██ This court has held that proof of the company's knowledge of an employee's union activity is essential to the establishment of a discharge as discriminatory.

"Unquestionably, knowledge by the Company of a dischargee's union membership is a prerequisite to a finding that the discharge was made for that reason and the Board has the burden of proving this knowledge beyond mere suspicion or surmise." N. L. R. B. v. Lexington Chair Co., 361 F.2d 283, 291 (4 Cir. 1966).[1]

Judge Bell, speaking for this court in Riggs Distler & Company v. N. L. R. B., 327 F.2d 575 (4 Cir. 1963), held that while the Examiner can properly resolve issues of credibility "[n]onetheless the Board, after discounting all explanations offered by an employer for discharge of employees, must find unlawful motivation through substantial direct or indirect evidence." Id. at 580.

██ Since no direct evidence has been proffered to establish the company's knowledge the Board is necessarily relying on indirect or circumstantial evidence. However, the same standard applies to the findings of the Board based on indirect proof, i. e., they must be supported by substantial evidence.

This court has followed Chief Judge Parker's definition of substantial evidence laid down in Appalachian Electric Power Co. v. N. L. R. B., 93 F.2d 985, 989 (4 Cir. 1938). Substantial evidence was there defined as "evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences." Appalachian Electric was cited as authority in Riggs Distler & Co. v. N. L. R. B., supra, 327 F.2d at 580, and in N. L. R. B. v. Shen-Valley Meat Packers, Inc., 211 F.2d 289, 293 (4 Cir. 1954). It seems that the edifice of employer discrimination erected by the Board in this case rests on too weak a foundation to withstand the substantial evidence test. The Examiner theorized that, because in the past employees had reported union activity to Jones, this fact tended to prove company knowledge of present activities. But the Examiner points to no evidence which fixes with any degree of specificity the nature of the prior union activity—secret or overt. Indeed the only basis for this theory lies in the specious inference that because an act or series of acts occurred at an earlier time it follows that, under similar circumstances, they will again occur. This reasoning has been soundly rejected in other areas of the law. 1 Wigmore on Evidence, § 192 (3d ed. 1940); 1 Jones on Evidence, § 162 (5th ed. 1958).

██ The Board relies on the fact that the company offered "false and pretextuous" reasons to justify Cox's discharge as evidence establishing the company's antiunion motivation. However,

1. See Beaver Valley Canning Co. v. N. L. R. B., 332 F.2d 429, 433 (8 Cir. 1964); Portable Electric Tools, Inc. v. N. L. R. B., 309 F.2d 423, 426–427 (7 Cir. 1962); N. L. R. B. v. Minnotte Manufacturing Corp., 299 F.2d 690, 692 (3 Cir. 1962); N. L. R. B. v. Tepper, 297 F.2d 280, 283 (10 Cir. 1961); N. L. R. B. v. Redwing Carriers, Inc., 284 F.2d 397, 402–403 (5 Cir. 1960); N. L. R. B. v.

Ford Radio & Mica Corp., 258 F.2d 457, 461 (2 Cir. 1958); N. L. R. B. v. Kaiser Aluminum & Chemical Corp., 217 F.2d 366, 368 (9 Cir. 1954); N. L. R. B. v. Whitin Machine Works, 204 F.2d 883, 884 (1 Cir. 1953); N. L. R. B. v. Sparks-Withington Co., 119 F.2d 78 (6 Cir. 1941); Minnesota Mining & Manufacturing Co., 81 NLRB 557, 559 (1949).

we cannot infer that reasons later assigned for Cox's discharge are false merely because they were not revealed to Cox at the time Jones told him he was fired.

■ While the Board adopted the Examiner's findings it appears to place particular emphasis upon two facts—the small work force (28) and the size of the town (2,000)—from which it claims substantial support for the inference that the company had knowledge of Cox's efforts in behalf of the union. Circumstantial evidence must be of such a character that it can reasonably be accepted as establishing as a fact the matter which is in issue. N. L. R. B. v. Shen-Valley Meat Packers, Inc., supra, 211 F.2d at 293.

It would appear that the evidence creates no more than a mere suspicion to support the inference that the company had knowledge of Cox's union activities. Then atop this inference the Board concludes that having learned of Cox's role in union organization his discharge was due to this activity. This proof pales in comparison to the company's evidence that Cox was discharged because of a combination of factors—the last straw being his insubordination and failure to follow instructions. Indeed the Examiner found that Cox permitted fifteen minutes to elapse before making any effort to obey the order to report to the center lining department where help was needed. The Examiner also accepted Boyce Wilson's testimony that Jones ordered him (Wilson) to report to center lining, although it was felt that Wilson was confused as to how much time elapsed. The Examiner and the Board rejected all reasons offered by the employer to justify Cox's discharge despite the findings of Cox's insubordination. It is the function of appellate courts to review the findings of the Examiner as adopted by the Board in order to determine whether such findings are supported by substantial evidence on the whole

record. Bilton Insulation, Inc. v. N. L. R. B., 303 F.2d 98 (4 Cir. 1962).

The Board's holding that the company violated sections 8(a) (3) and (1) by discharging Fred Cox is not supported by substantial evidence and the order of reinstatement will not be enforced.

## Section 8(a) (4) Violation

■ The Examiner and the Board also found that the company violated section 8(a) (4) of the Act by refusing to reinstate Cox because he had filed unfair labor practice charges.[2] The Examiner, who once again credited Cox rather than Jones, found that on July 30, 1964, Cox, after getting Jones' permission, came to the latter's home and asked to be reinstated; Jones stated that he could not have his job back because of the unfair labor practice charges; that Cox offered to withdraw the charges but that Jones remained firm in his refusal to rehire Cox. On this basis the Examiner and the Board concluded that the company violated section 8(a) (4). We find this conclusion to be lacking substantial support in the evidence. The evidence as interpreted by the Examiner and the Board does not constitute a violation of section 8(a) (4). Cox had been discharged previous to the filing of unfair labor practice charges. It was he who sought out Jones and it was who made the offer to withdraw the charges. Jones made no threats, promises or offers to bargain. This is not a situation where an employee who has filed charges is subsequently discharged or denied reinstatement at the termination of a strike. It seems entirely consistent with the company's discharge of Cox in the first instance to deny him reinstatement at a later time. If the law were as the Board contends any employer who had discharged a worker for cause would be hard pressed to justify a denial of his request for reinstatement after such worker had filed unfair labor practice charges. The Seventh Circuit recently stated that "en-

2. Section 8(a) provides "It shall be an unfair labor practice for an employer * * * (4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter; * * *."

gaging in protected concerted activity, such as filing grievances, does not immunize employees against discharge for legitimate reasons." Hawkins v. N. L. R. B., 358 F.2d 281, 283 (1966). Nor does such activity insure that a request for reinstatement will be granted.

The petition of the company to set aside the Board's order as to the violations with respect to Cox's discharge—sections 8(a) (3), (1) and (4)—will be granted and Cox's discharge will stand approved; the company's petition to set aside the order with respect to the independent section 8(a) (1) violation is denied and the Board's cross-petition for enforcement as to that violation is granted.

Enforcement granted in part and denied in part.