DECISION
This is an appeal from a February 26, 1998 decision of the Rhode Island State Labor Relations Board (the Board). In its decision, the Board determined that the State of Rhode Island Department of Labor and Training (Department of Labor), formerly known as the Department of Employment and Training (Department of Employment), committed unfair labor practices. Jurisdiction in this Court is pursuant to G.L. 1956 §§ 28-7-29 and 42-35-15.
 Facts/Travel
In 1985, the State Department of Economic Development within the Division of Job Development and Training (Department of Economics) merged into the Department of Employment Security (Department of Security), which subsequently became the Department of Employment. (3/27/97 Tr. at 11). The Department of Employment is presently called the Department of Labor (Department of Labor). (3/27/97 Tr. at 11). Hereinafter, this Court will refer to the Departments of Security, Employment, and Labor all as the Department of Labor.
As a result of the aforementioned merger, approximately eighteen employees of the Department of Economics became employees of the Department of Labor. (3/27/97 Tr. at 14-5). The Department of Economics employees were union employees represented by Local 2884 of Rhode Island Council 94, AFSCME, AFL-CIO (Council 94). The certified bargaining unit representative for non-management employees at the Department of Labor was Rhode Island Employees' Security Alliance, Local 401 (Local 401). Subsequent to the merger, Local 401 initiated a unit clarification action before the Board to determine whether the former Department of Economics employees were still represented by Council 94, or whether they were then represented by Local 401. The Board found in the unit clarification action, EE 3270, that the Department of Economics employees should not be accreted into the bargaining unit represented by Local 401. The Board determined that "[t]he existing bargaining unit represented by Council 94 [was] an appropriate bargaining unit for the purposes of collective bargaining [and] [t]he employees in question [had] not been abandoned during contract negotiations with the State by the certified bargaining agent." See EE-3270 Decision and Order, dated 2/21/89, pp. 2-3.
Thereafter, within the Department of Labor, some job positions were represented by Council 94, some were represented by Local 401, and others, that were historically non-union positions, remained unrepresented. In some instances, identical job classifications existed simultaneously within two or more different groups. Prior to the merger, the position of Senior Electronic Computer Programmer (Computer Programmer) was both a union position within the Department of Economics, represented by Council 94, and a non-union position within the Department of Labor.
After the merger, in July 1994, the Department of Labor experienced budgetary problems due to cuts in federal funding. As a result, the Department's associate directors were forced to implement cost-saving measures, with layoffs being the last resort. Findings of Fact, ¶ 5.
In or around August 1994, the Department of Labor posted a job vacancy for a non-union Computer Programmer (job posting), a position which had remained vacant for two years due to retirement. (6/10/97 Tr. at 17). At the time of the posting, Judith Magarian (Magarian), a former Department of Economics employee, held an identical classification as a Council 94 bargaining unit member. Magarian bid for the non-union position and was given the job. On September 18, 1994, Magarian transferred to her new position as Computer Programmer. The job titles and duties were exactly the same. The only difference between the two positions was that the new position was a non-union position. (3/27/97 Tr. at 31-2; 6/10/97 Tr. at 21).
Later, in September 1994, the Department of Labor laid off employees from management, Local 401, Council 94, and non-union positions. On September 28, 1994, in response to the layoffs and the job posting, Council 94 filed an unfair labor practice charge against the Department of Labor, alleging violations of R.I.G.L. §§ 28-7-13, subsections 1, 2, 3, 5, 8, 9, and 10. Council 94 alleged that the Department of Labor "targeted members of [the Council 94] bargaining unit through layoffs and the transfer of bargaining unit positions to non union positions . . . [and] . . . embarked on a calculated plan for the purpose of interfering with the existence of the bargaining unit at the Department of Employment." See Charge to the Board, dated 9/27/94, ¶¶ 1, 2.
On February 18, 1997 and February 21, 1997, the Board issued a Complaint and Amended Complaint which asserted the same allegations as Council 94's charge. On March 10, 1997, the Department of Labor filed, with its answer, a motion to dismiss and a motion for production of documents and other information. Formal evidentiary hearings were held on March 27, 1997 and on June 10, 1997.
At the March 27, 1997 hearing, Council 94 called Sal Lombardi (Lombardi), the president of Council 94 and an investigator for the treasury department, retirement division, to testify on its behalf. Lombardi stated that, prior to the September 1994 layoffs, nine Council 94 members were in the Department of Labor. According to Lombardi, five of the nine Council 94 members received layoff notices. Lombardi claimed that he filed grievances against the Department of Labor due to the fact that three of those employees had military status and could not be laid off. (3/27/97 Tr. at 24-6, 78-9). Magarian was one of the nine aforementioned employees. (3/27/97 Tr. at 24). Lombardi spoke about Magarian's transfer from a union to a non-union position and testified that, around the same time, other employees' positions changed from union positions to non-union positions. (3/27/97 Tr. at 33-7). Lombardi did acknowledge, however, that neither Magarian, nor any other Council 94 member, was transferred to a non-union position without first voluntarily bidding for it. (3/27/97 Tr. at 40-3).
At the June 10, 1997 hearing, Council 94 called Magarian as a witness. Magarian testified that she was not forced to bid out of her union position and into the non-union position. She did state, however, that in September 1994, she was called into the office of Bill Fagan, the Assistant Director in charge of Information Services (Fagan), and shown the job posting. (6/10/97 Tr. at 13). Magarian testified that Fagan told her that the Chief of Employment and Training Operations in the Personnel Unit, Walter McGarry, (McGarry), said to "make sure" that Magarian was shown the job posting. (6/10/97 Tr. at 13). Magarian further testified that Fagan told her that giving up her union status would "be a help to [her]" and applying for the position would "solidify her employment." (6/10/97 Tr. at 13-5). Magarian also admitted that upon transferring to the non-union Computer Programmer position, neither her benefits nor her salary changed, and her duties remained the same. (6/10/97 Tr. at 13-4).
McGarry testified on behalf of the Department of Labor. He explained that in or around September 1994, the Department of Labor was experiencing funding problems. (6/10/97 Tr. at 27). McGarry contended that the reason Fagan called Magarian into his office to ensure that she saw the job posting was because "[s]ometimes a person will bid on a position and then take the posting down so nobody else knows about it. . . ." (6/10/97 Tr. at 36).
McGarry further testified that, although the Department of Labor was in financial straits, it posted a job vacancy for a position that had been vacant for two years and for which two other, identical positions already existed. (6/10/97 Tr. at 48). McGarry insisted that, in spite of the budgetary restrictions, it was absolutely necessary that the Department of Labor hire a third Computer Programmer. McGarry admitted, however, that subsequent to Magarian's transferring to the non-union position, her vacated union position was never posted or filled and that regardless of her former job classification, to wit: union, Magarian could have been required to perform the duties she is presently obligated to perform under her new non-union classification. (6/10/97 Tr. at 48, 53-4, 58-9).
On February 26, 1998, the Board issued a Decision and Order. In its Decision, the Board determined that the Department of Labor "did indeed target the elimination of a union position, without a legitimate business purpose and without first negotiating the same with the Union, in violation of R.I.G.L. § 28-7-13 (5) and (10)." See Decision and Order, dated 2/26/98, p. 8. The Board found, however, that Council 94 "failed to set forth specific evidence to establish a discriminatory intent or actions on the part of the [Department of Labor] in the 1994 layoffs." Id. The Board further determined that Council 94 "failed to establish that the [Department of Labor] embarked on a calculated plan to interfere with the bargaining unit." Id.
Additionally, the Board held that "investigative reports of the Board in connection with charges of Unfair Labor Practice are protected from disclosure under R.I.G.L. [§] 38-2-2 (4) (E), (K), and (P) and Article III, Section 20, and Article IV, Section 60 of the State Labor Relations Board's duly enacted Rules and Regulations." See Board's Conclusions of Law, ¶ 3. The Board thereby denied the Department of Labor's motion for production of documents. The Board also denied the Department of Labor's motion to dismiss and further ordered the Department "to cease and desist from targeting Council 94 positions for conversion to non-union positions" . . . and . . . "to transfer any duties that traveled from the union position to the non-union position back to the union position. The non bargaining unit position [was] also [t]hereby precluded from doing work that was done by the bargaining unit position." See Decision and Order, dated 2/26/98, p. 10. It is from the February 26, 1998 Decision and Order that the Department of Labor presently appeals.
 Standard of Review
Superior Court review of an agency decision is controlled by G.L. 1956 (1993 Reenactment) § 42-35-15 (5)(g), which provides:
 "42-35-15. Judicial review of contested cases.
 (5)(g) The court shall not substitute its judgment for that of the agency board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of an agency, a justice of the Superior Court may not substitute his or her judgment for that of the agency board on issues of fact or as to the credibility of testifying witnesses, Mercantum Farm Corp. v. Dutra,572 A.2d 286, 288 (R.I. 1990) (citing Leviton Mfg. Co. v. Lillibridge,120 R.I. 283, 291, 387 A.2d 1034, 1038 (1978)); Center for BehavioralHealth, Rhode Island, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998), where substantial evidence exists on the record to support the board's findings. Baker v. Department of Employment andTraining Board of Review, 637 A.2d 360, 366 (R.I. 1994) (citingDePetrillo v. Department of Employment Security, 623 A.2d 31, 34 (R.I. 1993); Whitelaw v. Board of Review, Department ofEmployment Security, 95 R.I. 154, 156, 185 A.2d 104, 105 (1962)). Findings of fact by an agency board "are, in the absence of fraud, conclusive upon this court if in the record there is any competent legal evidence from which those findings could properly be made." Mercantum Farm, 572 A.2d at 288 (citing Leviton, 120 R.I. at 287, 387 A.2d at 1036-37). Legally competent evidence is "marked `by the presence of `some' or `any' evidence supporting the agency's findings.'" State v. Rhode Island State LaborRelations Board, 694 A.2d 24, 28 (R.I. 1997) (citingEnvironmental Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993)).
 Unfair Labor Practices
Council 94 argues that the Department of Labor committed unfair labor practices by embarking on a calculated plan to interfere with the existence of its bargaining unit and by targeting Council 94 positions for layoffs after the 1994 merger. Council 94 further alleges that, in addition to the layoffs, the Department of Labor coerced two of its employees into leaving their union positions for non-union positions of almost identical natures.
The Department of Labor contends that it never targeted Council 94 to "decimate" it. It maintains that it only engaged in across-the-board layoffs which were done for strictly budgetary reasons. The Department of Labor further argues that the bargaining unit "decimated" through the normal course of state service, through retirements, and through people voluntarily bidding out. (3/27/97 Tr. at 20).
The Board found no merit to Council 94's allegations of targeted, discriminatory layoffs on the part of the Department of Labor or a calculated plan to interfere with the existence of Council 94. The Board did, however, find that the Department of Labor committed unfair labor practices in violation of R.I.G.L. § 28-7-13 (5) and (10) by targeting the transfer of a union position to a non-union position without a legitimate business purpose. While Council 94 alleged that the Department of Labor committed violations with respect to two union positions, the Board found that the Department of Labor committed unfair labor practices with regard to only one union employee's position, Magarian's. As such, this Court will review the Board's findings regarding Magarian's transfer.
Section 28-7-13 of the Rhode Island Labor Relations Act governs unfair labor practices. Section 28-7-13 provides:
 "28-7-13. Unfair labor practices. — It shall be an unfair labor practice for an employer: . . .
 (5) To encourage membership in any company union or discourage membership in any labor organization, by discrimination in regard to hire or tenure or in any term or condition of employment; provided that nothing in this chapter shall preclude an employer from making an agreement with a labor organization requiring as a condition of employment membership therein, if such labor organization is the representative of employees as provided in §§ 28-7-14 — 28-7-19. . . .
 (10) To do any acts, other than those already enumerated in this section, which interfere with, restrain or coerce employees in the exercise of the rights guaranteed by § 28-7-12."
Subsections (5) and (10) essentially mirror their counterparts in the National Labor Relations Act. (N.L.R.A.). See
§§ 8 (a)(3) and (1) respectively. When appropriate, the Rhode Island Supreme Court has willingly looked to federal labor law for guidance in resolving state labor issues, See Board ofTrustees of Champlin Library v. Rhode Island State LaborRelations Board, 694 A.2d 1185, 1189 (R.I. 1997); BarringtonSchool Committee v. Rhode Island State Labor Relations Board,608 A.2d 1126, (R.I. 1992), in light of the parallels between our system of labor regulations and the federal system. FraternalOrder of Police, Westerly Lodge No. 10 v. Town of Westerly,659 A.2d 1104, 1105 (R.I. 1995).
The Department of Labor argues that the Board's decision is clearly erroneous because there is no evidence in either the record or in the Board's findings of fact that any actions by the Department of Labor encouraged or discouraged membership in any union, discriminated with regard to hire or tenure, or interfered with, restrained, or coerced Council 94 employers. The Department of Labor further argues that the only evidence presented with regard to Magarian's transfer from a union to a non-union position illustrates that Magarian voluntarily bid for the non-union position and that she never felt threatened or pressured to take the position. (3/27/97 Tr. at 47-8; 6/10/97 Tr. at 14-5).
Pursuant to § 28-7-13 (10), it is unlawful for an employer to perform any acts which interfere with, restrain or coerce employees in the exercise of the rights guaranteed by § 28-7-12. A finding by the Board of coercive interrogation must be based upon an assessment of the entire factual context in which the questioning occurred. N.L.R.B. v. Amber DeliveryService, Inc., 651 F.2d 57, 67 (1st Cir. 1981) (citing N.L.R.B.v. Prince Macaroni Mfg. Co., 329 F.2d 803, 806 (1st Cir. 1964)). "But even a single oblique remark can be considered unduly coercive in appropriate circumstances." Amber Delivery Service, 651 F.2d at 67-8 (Compare N.L.R.B. v. Pilgrim Foods, Inc.,591 F.2d 110, 114 (1st Cir. 1978), with N.L.R.B. v. Rich's ofPlymouth, Inc., 578 F.2d 880, 884-85 (1st Cir. 1978)). "The Board's inference of coercive tendency will be up held if reasonable," N.L.R.B. v. Marine Optical, Inc., 671 F.2d 11, 18 (1st Cir. 1982) (citing N.L.R.B. v. Cable Vision, Inc.,660 F.2d 1, 3, 5-7 (1st Cir. 1981); N.L.R.B. v. Haberman Construction Co.,618 F.2d 288, 296 (5th Cir. 1980)), "even if the statements are susceptible of a noncoercive interpretation." Marine Optical, 671 F.2d at 18 (citing N.L.R.B. v. Fort Vancouver Plywood Co.,604 F.2d 596, 599 n. 1 (9th Cir. 1979)). "Generally, courts will defer to the Board's special expertise on the impact of employer statements to employees." Marine Optical, Inc., 671 F.2d at 18 (citing N.L.R.B. v. Gissell Packing Co. Inc., 395 U.S. 575, 620, 89 S.Ct. 1918, 1943, 23 L.Ed.2d 547 (1969); Hedstrom Co. v.N.L.R.B., 629 F.2d 305, 314 (3d Cir. 1980) (in banc), certdenied, 450 U.S. 996, 101 S.Ct. 1699, 68 L.Ed.2d 196 (1981);N.L.R.B. v. Amoco Chemicals Co., 529 F.2d 427, 430 (5th Cir. 1976); Dubin-Haskell Lining Corp. v. N.L.R.B., 375 F.2d 568, 571 (4th Cir. 1968)). In Amber Delivery Service, the United States Court of Appeals, First Circuit (the Court of Appeals) determined that the questioning of a union supporter by the company president in the president's office with another supervisor present, on the same day an employee meeting was to be held in the midst of a union organizing campaign, was unlawfully coercive under the circumstances. Amber Delivery Service, supra at 67. In the instant case, it is undisputed that, in spite of the Department of Labor's customary practice of posting job vacancy notices, Fagan singled out Magarian by calling her into his office and personally making her aware of the non-union position. Fagan, who was Magarian's supervisor, explicitly stated, amidst an atmosphere of rampant layoff rumors, that applying for the non-union position would "help her" and "solidify her employment." Magarian testified that she was aware of the layoff rumors. (6/10/97 Tr. at 15). After a review of the entire factual context in which the conversation between Magarian and Fagan occurred, this Court finds that there was ample evidence on the record to support the Board's finding of coercion and therefore a violation of § 28-7-13 (10).
Whether an employer's actions constitute § 8 (a)(3) violations turns on the employer's primary motivation. Seegenerally NLRB v. Transportation Management Corp., 462 U.S. 393, 397-403, 103 S.Ct. 2469, 2472-75, 76 L.Ed.2d 667 (1983). If the goal is to discourage union activity, there is a violation. If there is no anti-union motive, or if the same action would have been taken based on some other, non-discriminatory, motive, there is no violation. Motive may be inferred from both direct and circumstantial evidence. See Pilgrim Foods, 591 F.2d at 118.
In N.L.R.B. v. Eastern Smelting Refining Corp.,598 F.2d 666 (1st Cir. 1979), the Court of Appeals set forth a guide to be used in analyzing cases in which unfair labor practices in violation of section 8 (a)(1) and (3) of the N.L.R.A. are alleged. In Eastern Smelting, the Court of Appeals referred to any employer motives which are coercive or discriminatory due to anti-union animus as "bad reasons." Eastern Smelting, 598 F.2d at 669. Those motives which are based upon business judgment and not on intentions to interfere with rights protected under the N.L.R.A. are deemed "good reasons." Id. Even where the board meets its burden of demonstrating a bad reason or improper motivation on the part of the employer, the employer may still defend itself by producing sufficient evidence of a good reason to rebut the prima facie showing, or presumption of a violation.Id. at 671 (citing Mt. Healthy City Board of Educ. v. Doyle,429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977));N.L.R.B. v. Wright Line, A Division of Wright Line, Inc.,662 F.2d 899, 904 (1st Cir. 1981). In circumstances where the Board lacks independent proof that an employer's actions were motivated by bad reasons, the employer's assertion of an "obviously weak or implausible good reason . . . may support an inference that there was a bad reason." Id. at 670-1.
In N.L.R.B. v. Barnes and Noble Bookstores, Inc.,598 F.2d 666 (1st Cir. 1979), consolidated with Eastern Smelting, an employer was charged with unfair labor practice violations when it discharged a known union employee who worked in the children's book department of its store. The employer asserted as its "good" reason for discharging the employee that the children's department was overstaffed. The Court of Appeals found that the employer's asserted overstaffing was contradicted by the fact that three days prior to the discharge, the employer had hired another clerk; that clerks were frequently transferred to other positions throughout the store; and that due to the high turnover in the Boston location, some fifty new clerks were hired the following year. Id. at 674-5. As such, the Court of Appeals found that "the absence of factual support for [the employer's] asserted reason permitted an inference of improper motivation."Id.
In the instant case, during the relevant time period, two Computer Programmers were employed by the Department of Labor. A third, non-union Computer Programmer position had remained vacant for two years. The Department of Labor's explanation for finally deciding to fill the vacancy at a time when budgetary restrictions were causing the Department to lay off numerous employees was that it was "absolutely necessary" for the Department to have three Computer Programmers[.]" (6/10/97 Tr. at 58). Ironically, however, once Magarian transferred to her new non-union position, her vacated union position was never posted or filled. The Department of Labor offered no explanation for this drastic and dramatic change in circumstances.
Furthermore, McGarry testified that the non-union position had been posted because the Department of Labor was experiencing difficulties and needed specific programming done. (6/10/97 Tr. at 52). However, it is evident from the record that Magarian's duties remained the same once she transferred from her union position to her non-union position. Moreover, since Magarian's former Computer Programmer position was already within the Department of Labor, she could have been directed to perform those necessary "specific programming" duties without ever having to be transferred to another position. (6/10/97 Tr. at 53).
After a review of the record, this Court finds that substantial evidence exists to support the Board's finding that the Department of Labor violated § 28-7-13 (5). There is no factual support for the Department of Labor's asserted "good" reason for posting the long-vacated non-union position. Accordingly, this Court finds that the record supports an inference of improper motivation in violation of § 28-7-13
(5) and (10).
 Motion for Production of Documents and Other Information
The Department of Labor also appeals the Board's denial of its motion for production of documents and other information. In its motion for production, filed March 10, 1997, the Department of Labor requested that the Board "furnish it with all information obtained by the Board and/or its agents or employees in the investigations of the charges submitted in these matters including but not limited to all notes, statements, documents, affidavits, reports and memoranda, together with copies of all such documentary information relied upon by the Board in their formulation of, and issuance of, the Complaint in this matter." Additionally, the Department of Labor requested "the names of those members of the Board and/or its agents and employees who gathered and/or reviewed the requested information and participated in the decision by the Board to issue Complaints in this matter."
"Section 28-7-33, titled "Access of board to evidence — Subpoena power — Oaths and affirmations," provides:
 For the purpose of all hearings and investigations which, in the opinion of the board, are necessary and proper for the exercise of the powers vested in it by Secs. 28-7-14
— 28-7-25, the board . . . shall at all reasonable times have access to, for the purpose of examination and the right to examine, copy, or photograph any evidence . . . of any person being investigated or proceeded against that relates to any matter under investigation or in question. Any member of the board shall have the power to issue subpoenas requiring the attendance and testimony of witnesses and the production of any evidence that relates to any matter under investigation or in question before the board, its member, agent, or agency conducting the hearing or investigation. Any member of the board, or any agent or agency designated by the board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence.
The Board enjoys these rights, pursuant to its police power, to further its investigations into alleged unfair labor practices. Nowhere in the aforestated provision or anywhere in the Administrative Procedures Act (A.P.A.) does it provide that an employer under investigation is entitled to these same rights and privileges.
In La Petite Auberge, Inc. v. R.I. Commission for HumanRights, 419 A.2d 274 (R.I. 1980), the Supreme Court of Rhode Island recognized the importance of pre-hearing discovery. In that case, the employer under investigation sought to depose its employee prior to the hearing on a discriminatory employment claim. The Commission for Human Rights (the Commission) refused to exercise its police powers and order the employee to submit to a deposition prior to the hearing. The Supreme Court affirmed the Superior Court justice's decision ordering the Commission to afford the employer a degree of pre-hearing discovery including directing the employee to submit to the deposition. The Supreme Court concluded that nowhere in the A.P.A. is the Commission's police power limited so that it does not apply prior to the hearing.
The La Petite Auberge case is distinguishable from the instant case, however. In La Petite Auberge, the Court found that the employer was entitled to discovery materials from the employee and other related parties. Here, the department of Labor seeks discovery materials directly from the Board. The Supreme Court never intended that the Board's police powers apply to itself to produce discovery materials.
As such, this Court finds that the Board's decision was not in violation of statutory provisions. The Board's actions were neither arbitrary or capricious, nor characterized by an abuse of discretion or other errors of law.
Lastly, the Department of Labor alleges that the remedy in paragraph four of the Board's order is arbitrary, capricious, and incapable of being instituted. The Department argues that since the duties of the union and non-union positions are the same, the Board's order that "any duties that traveled from the union position to the non-union position" be transferred back to the union position and that "[t]he non bargaining unit position is . . . precluded from doing work that was done by the bargaining unit position" is incapable of being instituted. The record and the final decision clearly demonstrate that the Board did not intend to preclude non-union Computer Programmers from performing their own normally assigned duties. Rather, the Board intended only to preclude them from performing the aforementioned specific duties that traveled back to the union with Magarian. Accordingly, this Court finds that the Board's order in paragraph four was neither arbitrary nor capricious. Substantial rights of the Department of Labor have not been prejudiced.
After review of the entire record, the Board's decision in its entirety is affirmed. Counsel shall submit the appropriate order for entry.
 Supreme Court
 ORDER
The attached Sexual Harassment Policy For The Rhode Island Judiciary has the force of an order of this Court. Violations of this policy may, in addition to sanctions provided therein, be regarded as contempt of this Court.
Entered as an Order of this Court this 25th day of October 1999.
By Order,
__________________________ Clerk
 SEXUAL HARASSMENT POLICY FOR THE RHODE ISLAND JUDICIARY
PURPOSE
This policy has been promulgated by the Supreme Court to address sexual harassment in the workplace by judges, supervisors, employees, members of the public who use court facilities, vendors and contractors. As an employee of the judiciary, it is your obligation to become familiar with the policy, review the examples of conduct that may constitute unlawful sexual harassment and utilize the complaint procedure when you believe you are a victim of sexual harassment.
POLICY
All employees have the right to work in an environment free from discrimination and conduct that can be considered harassing, coercive or disruptive, including sexual harassment. Sexual harassment in the workplace is unlawful and unacceptable conduct. It will not be tolerated, and appropriate disciplinary or corrective action will be initiated against anyone who engages in such conduct. In addition to the remedies available through state and federal civil rights organizations, the courts and collective bargaining agreements, the state judiciary makes available to its employees a process (see Procedures for Dealing with Sexual Harassment) for resolving allegations of sexual harassment in the workplace and other forms of unlawful employment discrimination. It is unlawful to retaliate against an employee who files a complaint of sexual harassment or cooperates in the investigation of a sexual harassment complaint.
All supervisors are responsible for monitoring working conditions to detect and stop sexual harassment and for reporting complaints to those responsible for resolving them. Supervisors found negligent in meeting this responsibility will be subject to disciplinary action. Furthermore, all court employees are encouraged to report their observations of any suspected sexual harassment.
DEFINITION OF SEXUAL HARASSMENT
Sexual harassment is a form of sex discrimination that is illegal under Title VII of the Civil Rights Act of 1964, G.L. 1956 chapter 51 of title 28 (the Sexual Harassment, Education and Training in the Workplace Act) and G.L. 1956 chapter 5 of title 28 (the Fair Employment Practices Act). The term sexual harassment means "any unwelcome sexual advances or requests for sexual favors or any other verbal or physical conduct of a sexual nature when:
• Submission to such conduct or such advances or such requests is made either explicitly or implicitly a term or condition of an individual's employment; or
• Submission to or rejection of such conduct or advances or requests by an individual is used as the basis for employment decisions affecting such individual; or
• Such conduct or advances or requests have the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." See § 28-51-1 (a).
Sexual harassment does not refer to occasional compliments or other behavior of a socially acceptable nature. It refers to behavior that is not welcome, that is personally offensive and that fails to respect the rights of others. Sexual harassment occurs in a variety of situations that share a common element: the inappropriate introduction of sexual activities or comments into the court environment.
Sexual harassment often involves relationships of unequal power. Such situations may contain elements of coercion, such as when compliance with requests for sexual favors becomes a criterion for granting privileges or favorable treatment on the job. However, sexual harassment may also involve relationships among "equals," such as when repeated advances or demeaning verbal comments by a coworker towards another coworker have a harmful effect on a person's ability to perform his or her work. Sexual harassment can also involve employee behavior directed at non-employees or non-employee behavior directed at employees.
The following are examples of sexual harassment:
• Repeated unwanted sexual flirtations, advances or propositions;
• Continued or repeated verbal abuse or innuendo of a sexual nature;
• Uninvited physical contact such as touching, hugging, patting, brushing or pinching;
• Comments of a sexual nature about an individual's body or sexual terms used to describe an individual;
• Display of sexually suggestive objects, pictures, posters or cartoons;
• Continued or repeated jokes, language or remarks of a sexual nature in front of people who find them offensive;
• Prolonged staring or leering at a person;
• Obscene gestures or suggestive or insulting sounds;
• The demand for sexual favors accompanied by an implied or overt threat concerning an individual's employment status or promises of preferential treatment;
• Indecent exposure.
This behavior is unacceptable in the workplace and in other work-related settings, such as work-related social events and travel.
PROCEDURES FOR DEALING WITH SEXUAL HARASSMENT
This section is directed to employees who feel they are being harassed.
Initial Step:
If you believe you are being sexually harassed, the first step is to promptly and firmly tell whoever is doing the harassing to stop the offensive conduct. Explain to the person that the behavior is offensive and unwelcome.
• State that his/her conduct is offensive, intimidating and/or embarrassing.
• Describe how the harassment negatively affects your work.
• Request that he or she stop the conduct immediately.
Writing down what happened and your efforts to resolve the problem may be useful because you may decide to file a formal complaint if your initial attempt to stop the harassment is unsuccessful.
The Formal Complaint Process:
There are several ways employees can file a sexual harassment complaint. These options are available to assure that someone is available to respond regardless of the employee's office or location. If there is no one available at your location, you can contact one of the other people listed below, and he/she will arrange to meet with you.
You may file a formal complaint by contacting your supervisor, or the individual who has been designated in your court to assist in investigating sexual harassment complaints or
the Assistant Administrator for Human Resources in the Administrative Office for State Courts, William Melone. His office is located on the sixth floor of the Licht Judicial Complex at 250 Benefit Street, and his phone number is 222-2700. The following are the names and phone numbers of the individuals designated by each court:
============================================================================ COURT | NAME | PHONE | ADDRESS
____________________|_________________|__________|__________________________ Supreme Court | William Melone | 222-2700 | Licht Judicial Complex ____________________|_________________|__________|__________________________ Superior Court | Susan L. Revens | 222-3288 | Licht Judicial Complex ____________________|_________________|__________|__________________________ Family Court | Joseph Baxter | 458-3203 | Garrahy Judicial Complex ____________________|_________________|__________|__________________________ District Court | Joan Godfrey | 458-5212 | Garrahy Judicial Complex ____________________|_________________|__________|__________________________ Workers' | Hon. Janette | 458-4307 | Garrahy Judicial Compensation Court | Bertness | | Complex ____________________|_________________|__________|__________________________ Rhode Island | Richard Carroll | 222-2286 | 345 Harris Avenue, Traffic Tribunal | | | Providence, RI ============================================================================
The person whom you have contacted will explain the options for filing a complaint. In addition to seeking remedial action within the judiciary, employees have the option of pursuing the remedies listed below in the section entitled "OTHER REMEDIES." If you choose to file a complaint within the judiciary, this person will provide you with a complaint form and, if requested, will assist you in filling it out. See Sexual Harassment Complaint Information Form. Both you and this individual must sign the complaint. The complaint will be investigated in a fair and expeditious manner, and both the person filing the complaint and the person alleged to have committed the conduct will be informed of the results of the investigation.
When a complaint is filed, the process for investigating and resolving it will be as follows:
1. If the written complaint has been filed with a supervisor or the person designated by each court to assist in investigating sexual harassment complaints, this individual will submit it to the Assistant Administrator for Human Resources within the next business day. The Assistant Administrator, in turn, will provide copies of the complaint to the administrator and the chief judge or presiding justice of the court involved.
2. The Assistant Administrator will recommend to the court administrator and the chief judge or presiding justice whether immediate action is necessary. When warranted, immediate action, such as voluntary reassignment or administrative leave for the person filing the complaint, will be initiated within the next business day.
3. The designated person in each court will assist the Assistant Administrator for Human Resources in conducting an investigation of the complaint, which may include private interviews with the person filing the complaint, with the person alleged to have committed sexual harassment and with witnesses.
4. At the conclusion of the investigation, but no longer than 45 days after the complaint was filed, the Assistant Administrator for Human Resources will prepare a report that will include his or her findings of fact, a conclusion regarding the harassment claim and the resolution or proposed resolution of the matter. This report will go initially to the court administrator and the chief judge or presiding justice. After they have reviewed it, the Assistant Administrator will share it with the person who filed the complaint and the alleged offender. If the employee involved is in a bargaining unit, a union representative will be notified in accordance with the appropriate collective bargaining agreement.
CONFIDENTIALITY:
Persons filing a complaint may request to remain anonymous. However, complete confidentiality restricts options and may make it difficult to resolve the problem. Thus, disclosure may be necessary under certain circumstances. Every attempt will be made to conduct the investigation in a manner that protects the confidentiality of the person filing the complaint, the alleged harasser and all witnesses to the fullest extent possible.
PROHIBITION AGAINST RETALIATION:
As provided in § 28-51-2 (b)(ii), retaliation in any form against anyone who complains of sexual harassment or who assists in the investigation of such complaints is expressly prohibited and may result in disciplinary action against the retaliator(s).See also § 28-50-3.
DISCIPLINE
Persons found in violation of this policy will be disciplined according to applicable personnel rules and bargaining unit agreements. Disciplinary action may include: referral to counseling, oral reprimand, written reprimand, reassignment, suspension (with or without pay), termination, and possible criminal action. In the instance where a judge is the alleged offender, the action may also include referral of the complaint to the Commission on Judicial Tenure and Discipline. Remedial action for non-employees may include removal from court premises, a report to the employer, termination of the vendor's contract or other appropriate action.
OTHER REMEDIES:
Employees who believe they have been subjected to sexual harassment may also contact any of the following agencies:
• The United States Equal Opportunity Commission — One Congress Street, 10th Floor, Boston, MA 02115 (617-565-3200) Complaints must be filed within 180 days of the incident.
• The Rhode Island Commission for Human Rights — 10 Abbott Park Place, Providence, RI (401-277-2661) Complaints must be filed within 300 days of the last act of discrimination.
• For employees who are union members: Local 808 of L.I.U.N.A., AFL-CIO; Court Reporters' Alliance of Local 4829, RIFT/AFT, AFL-CIO; Local 400 of I.F.P.T.E., AFL-CIO; Council 94, A.F.S.C.M.E., AFL-CIO; or the Association of Department of Administration Supervisors.
• The State Equal Opportunity Office — One Capitol Hill, Providence, RI 02908-5865 (401-222-3090, TDD 401-222-6144, FAX 401-222-6391)
SEXUAL HARASSMENT TRAINING AND INFORMATION:
The prevention and elimination of sexual harassment in the court environment can be achieved by fostering an awareness of the issue through education and by implementing a procedure for handling complaints.
• All employees will receive (and acknowledge the receipt of) a copy of the Sexual Harassment Policy for the Rhode Island Judiciary; all employees will receive an updated version whenever the policy is revised.
• A policy summary will be posted in every court location.
• All new judicial employees will attend sexual harassment training as soon as practicable subsequent to their appointment.
• Training will be provided to all supervisors on their responsibilities for identifying and stopping sexual harassment. New supervisors will receive this training as soon as practicable subsequent to their appointment.
 RHODE ISLAND JUDICIARY SEXUAL HARASSMENT COMPLAINT INFORMATION FORM
1. Complainant information: Name: __________________________________________
Title: _________________________________________
Court: _________________________________________
Location of Assignment (Division or County): ________________________________________________
Work Phone Number: _____________________________
2. Name of Immediate Supervisor: ___________________________________________
3. Respondent Information: Name of Person Charged: ___________________
___________________________________________
Title: ____________________________________
4. Date(s) of Alleged Violation(s): ________________________________________
5. Place(s) of Alleged Violation(s): _______________________________________
6. Description of the Violation(s): ________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________ _________________________________________________________________________